Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio


# MEMORANDUM OPINION

No. 04-09-00457-CR

Fred **FLORES**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 226th Judicial District Court, Bexar County, Texas
Trial Court No. 2005-CR-8161
Honorable Sid L. Harle, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:    Sandee Bryan Marion, Justice
Phylis J. Speedlin, Justice
Marialyn Barnard, Justice

Delivered and Filed: May 12, 2010

AFFIRMED

This is an appeal from the trial court's order denying appellant Fred Flores's motion for post-conviction DNA testing. Flores contends the trial court erred in denying his motion because he made the requisite showing entitling him to DNA testing. We affirm.

### FACTUAL BACKGROUND[1]

Twelve-year-old J.P. and two other girls, V.R. and M.L., ran away from the St. Jude Ranch for Children. The girls went to the home of L.F., a sixteen-year-old cousin of V.R. According to J.P., L.F. attempted to have sex with her on April 3, 2005, but he stopped when she told him it hurt. However, she said that the next day L.F. sexually assaulted her with a spoon in a shed behind the house because he was angry at her for not having sex with him the day before.

On the same day J.P. was assaulted with the spoon, the two other girls left the house to use a pay phone. J.P. went into the house. Flores, the uncle of L.F., told J.P. she could sleep in his room. J.P. claimed she and 39-year-old Flores took off their clothes and had sex for approximately thirty minutes until he ejaculated inside her vagina. When the other girls returned, all three girls left the house to avoid being caught by L.F.'s mother. J.P. ultimately borrowed a cell phone and called police to tell them about the sexual assault.

After J.P. told police about the sexual assault, she was taken to Santa Rosa Children's Hospital for a sexual assault examination, and to the San Antonio Police Department's Sex Crimes Office where DNA evidence was recovered. The results of the sexual assault exam showed J.P. had bruising to her right breast, and a scratch on her left buttock. An anogenital exam showed a bruise to the inner edge of the hymen, a large blood clot in the vestibule, and a linear tear to the anus. The findings were consistent with the types of sexual acts described by J.P., and were consistent in time from the incident.

---

[1] Because this was a plea of no contest pursuant to a plea agreement, the facts have been extracted from the police reports, medical reports, and witness statements made during the course of the investigation. These documents were included as part of the "Waiver, Consent to Stipulation of Testimony and Stipulations" signed and sworn to by Flores.

The record also indicates J.P. told M.L. and V.R. that she had sex with Flores. V.R. stated that after J.P. had sex with Flores, J.P. put her hands down her own pants and when she removed her hand, there was blood on it.

During the investigation, a detective contacted L.F. who told the detective "his uncle screwed up and had sex with a girl." L.F. admitted he tried to have sex with J.P., but could not. He also claimed J.P. lied about her age. The detective executed a search warrant for a DNA sample from L.F. A buccal swab was taken from L.F., and a DNA test excluded L.F. as a source of the DNA found on J.P.

After J.P. identified Flores as her assailant from a photo array, a warrant was issued for a DNA sample from Flores. The warrant could not be executed because Flores had left San Antonio. Flores was later arrested in El Paso for public intoxication, and returned to Bexar County. Upon his return, a DNA sample was taken.

Investigators collected evidence from the house where the assault took place. The evidence included a sheet, two comforters, one towel, a white t-shirt, a jacket, a pair of warm-up bottoms, a pair of boxers, a silver spoon, and trace evidence lifted from the bed and sofa where J.P. claimed the sexual assaults occurred.

The Bexar County Criminal Investigation Laboratory conducted examinations of the swabs taken from J.P., which included vaginal swabs, anal swabs, buccal swabs, and swabs from J.P.'s breasts. DNA not belonging to J.P. was found as a result of the swabs. Swabs were also taken from the spoon. The lab also tested the buccal swabs taken from L.F. and Flores. Although the test results excluded Flores as the source of the DNA on the spoon, Flores could not be excluded as the source of the human DNA found on some of the vaginal, anal, and breast swabs taken from J.P. It was

determined that Flores's DNA profile would appear only in one in "4.95 X 10 of Caucasian individuals," one in "4.46 X 10 of African-American individuals," one in "1.26 X 10 of Southeastern Hispanic individuals," and one in " 3.68 X 10 of Southwestern Hispanic individuals."

As a result of the investigation, Flores was indicted for the offense of aggravated sexual assault of a child younger than fourteen years. Flores eventually entered into a plea agreement with the State. In accordance with his plea agreement, Flores pleaded no contest to the charged offense, and was convicted and sentenced to ten years confinement.

## PROCEDURAL BACKGROUND

After his conviction, Flores filed a pro se notice of appeal, but this court dismissed the appeal for want of jurisdiction because the notice of appeal was untimely. *Flores v. State*, No. 04-07-00501-CR, 2007 WL 2376153, at *1 (Tex. App.—San Antonio Aug. 22, 2007, no pet.) (mem. op.) (not designated for publication). Approximately two years after his conviction, Flores filed a pro se motion for post-conviction DNA testing pursuant to Chapter 64 of the Texas Code of Criminal Procedure. The trial court denied the motion, stating "[t]here are no reasonable grounds to file such a motion." Flores filed a pro se notice of appeal, and the trial court appointed new counsel to represent Flores on appeal.

## ANALYSIS

In reviewing a trial court's order denying post-conviction DNA testing, we use a bifurcated standard of review. *Lewis v. State*, 191 S.W.3d 225, 227 (Tex. App.—San Antonio 2005, pet. ref'd) (citing *Whitaker v. State*, 160 S.W.3d 5, 8 (Tex. Crim. App. 2004)). "We afford almost total deference to the 'trial court's determination of issues of historical fact and application-of-law-to-fact issues that turn on credibility and demeanor, while we review de novo other application-of-law-to-

fact issues.'" *Lewis*, 191 S.W.3d at 227 (quoting *Rivera v. State*, 89 S.W.3d 55, 59 (Tex. Crim. App. 2002)).

Article 64.01(a) permits a convicted person to move for DNA testing of evidence containing biological material. TEX. CODE CRIM. PROC. ANN. art. 64.01(a) (Vernon Supp. 2009). However, the motion "must be accompanied by an affidavit, sworn to by the convicted person, containing statements of fact in support of the motion." *Id.* Only certain evidence is subject to testing under article 64.01. This evidence must have been in possession of the State during trial and either (1) was not previously tested because DNA testing was not available or was available but was not capable of providing probative results, or (2) newer testing techniques exist that provide a reasonable likelihood of more accurate and probative results when compared to the original test. *Id.* art. 64.01(b).

The convicting court may order DNA testing if the convicted person complies with article 64.01 and, among other things, the court finds identity was an issue in the case and the convicted person establishes by a preponderance of the evidence that he (1) would not have been convicted if exculpatory results had been obtained through DNA testing, and (2) the request for testing is not made to unreasonably delay the execution of sentence or administration of justice. *Id.* art. 64.03(a)(2) (Vernon 2006). The court is prohibited from finding identity was not an issue solely because the convicted person pleaded guilty or nolo contendere. *Id.* art. 64.03(b).

Flores's appellate complaints with regard to the trial court's denial of his motion for post-conviction DNA testing are limited to the following: (1) the trial court erred in denying his motion because although the relevant material was subjected to DNA testing, it can be subjected to testing with new techniques that provide a reasonable likelihood of more accurate and probative results, *see*

*id.* art. 64.01(b)(2); and (2) the trial court erred in denying his motion because Flores established by a preponderance of the evidence that he would not have been convicted if exculpatory results had been obtained through DNA testing. *See id.* art. 64.03(a)(2)(A). As to his first contention, Flores does not actually contend there are new testing procedures available; rather, he argues the phrase "new testing techniques" should be construed to include retesting material that was previously tested but in a manner that was flawed or inaccurate. *See Chambers v. State*, 261 S.W.3d 755, 757 (Tex. App.–Dallas 2008, pet denied) (holding pro se pleadings are construed liberally, but pro se litigants are held to same standards as attorneys and required to comply with applicable law and rules of procedures). We hold Flores has not met the requirements of article 64.01.

Even if we assume retesting is available under article 64.01(b)(2) when prior DNA testing is inaccurate or flawed, Flores provided no evidence that the prior testing in this case was flawed or inaccurate. Flores relies on his assertion that J.P.'s story and the State's theory of the offense is inconsistent with the DNA testing results because the DNA testing did not find any evidence that L.F. anally assaulted J.P., when J.P. claimed he did, and therefore, the prior testing must have been flawed.

The DNA results show Flores could not be excluded as to the DNA found on the vaginal, breast, and anal swabs taken from J.P. This is consistent with J.P.'s claims that Flores ejaculated inside her vaginal cavity, and that Flores bit her breast. J.P. asserted L.F. anally assaulted her, but the lab results excluded his DNA from J.P.'s anal swabs. However, J.P. never claimed L.F. ejaculated into her anus, and stated they were in the shower when the assault occurred, possibly eliminating any potential DNA evidence. Moreover, her failure to mention that Flores might have anally assaulted her does not establish the DNA testing was inaccurate or that retesting would

exculpate Flores. J.P. admitted to one of the investigators that Flores told her "he could bend me over and do me from behind," and that Flores "kept grabbing my ass and pulling my cheeks apart the whole time we were having sex and he was hitting my butt." This could explain the inability to exclude Flores as the source of the DNA on the anal swabs taken from J.P. Additionally, J.P. told the investigator she was embarrassed to talk about the anal assault by L.F., so she might have withheld the anal assault by Flores.

A convicted person must do more than simply move for testing, but must provide facts in support of the motion. *Dinkins v. State*, 84 S.W.3d 639, 642 (Tex. Crim. App. 2002). Flores has not provided any facts in support of his motion; rather he has provided only self-serving, speculative statements and theories. There is nothing in the information provided by Flores with his article 64.01 motion to establish a reasonable likelihood that retesting would provide more accurate or probative results. *See* TEX. CODE CRIM. PROC. ANN. art. 64.01(b)(2). Because Flores failed to establish entitlement to testing pursuant to article 64.01, we need not determine whether he proved by a preponderance of the evidence that he would not have been convicted if exculpatory results had been obtained through DNA testing. *See id.* art. 64.03(a)(2)(A). Accordingly, we overrule Flores's sole issue and affirm the trial court's judgment.

Marialyn Barnard, Justice

Do Not Publish